IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH MOSS, | ) | CASE NO.  1:18CV02257 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS HEALTH | ) | **DEFENDANT UNIVERSITY** |
| SYSTEMS, INC., | ) | **HOSPITALS HEALTH SYSTEMS,** |
| | ) | **INC.'S MOTION FOR SUMMARY** |
| Defendant. | ) | **JUDGMENT** |
| | ) | |

NOW COMES Defendant University Hospitals Health Systems, Inc. ("University Hospitals") and moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to grant summary judgment in their favor and against Plaintiff Deborah Moss ("Plaintiff"). Summary judgment is appropriate because there are no issues of material fact and University Hospitals is entitled to judgment as a matter of law.

A Memorandum in Support of this Motion is attached.

Respectfully submitted,

*/s/ Donald C. Bulea*
Kerin Lyn Kaminski (00013522)
Donald C. Bulea (0084158)
GIFFEN & KAMINSKI, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone:    216-621-5161
Facsimile:    216-621-2399
E-mail:    kkaminski@thinkgk.com
dbulea@thinkgk.com
***Counsel for Defendant University Hospitals
Health Systems, Inc.***

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   STATEMENT OF THE ISSUES ................................................. 1

III.  STATEMENT OF FACTS ................................................. 2

IV.   LAW AND ARGUMENT ................................................. 8

   A.    Summary Judgment Should Be Granted In This Case ................................................. 8

   B.    Plaintiff Can Not Set Forth A Prima Facie Case of Disability Discrimination ........ 9

      *(1) Plaintiff Could Not Perform The Essential Functions Of Her Job With Or Without Accommodations* ................................................. 10

      *(2) The Proposed Accommodation Of Having Another Staff Member Attend Plaintiff's Group Therapy Sessions Would Create An Undue Hardship* ................................................. 16

   C.    Plaintiff Was Not Denied Any Reasonable Accommodations ................................................. 18

V.    CONCLUSION ................................................. 20

CERTIFICATE OF COMPLIANCE WITH L.R. 7.1 ................................................. 21

CERTIFICATE OF SERVICE ................................................. 22

**TABLE OF AUTHORITIES**

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).. 9

*Beckman v. Wal-Mart Stores, Inc.*, 739 Fed. Appx. 800, 804 (6th Cir. 2018) .......................... 20

*Belasco v. Warrensville Hts. City School Dist.*, 634 F.App'x 507, 514 (6th Cir.2015)..... 9, 12, 18

*Boileau v. Capital Bank Fin. Corp.*, 646 F.App'x 436, 441 (6th Cir.2016) ................................ 10

*Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir. 1999).............................................. 12, 13

*Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 849-50 (6th Cir. 1998) .......................... 15, 16

*Brumley v. UPS*, 909 F.3d 834, 839 (6th Cir.2018)........................................................................ 17

*Bukta v. J.C. Penney Co.*, 359 F.Supp.2d 649, 667 (N.D.Ohio 2004) ........................................ 16

*Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 449 (6th Cir.2017)................................... 13

*Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998) .............................................. 20

*Celotex Corp. v. Catrett*, 477 U.S., 317, 323, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986) ............... 9

*E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015)................................................... 13

*Gerton v. Verizon South Inc.*, 145 F. App'x 159, 168 (6th Cir. 2005) ........................................ 19

*Hall v. United States Postal Serv.*, 857 F.2d 1073, 1078 (6th Cir. 1988)................................... 16

*Hedrick v. W. Res. Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004) .............................................. 17

*Hersko v. Wilson*, S.D.Ohio No. 3:15-cv-215, 2018 U.S. Dist. LEXIS 119573, at *40 (July 18, 2018).............................................................................................................................................. 17

*Holt v. Olmsted Twp. Bd. of Trustees*, 43 F.Supp.2d 812, 823 (N.D.Ohio 1998)................. 16, 17

*Hoskins v. Oakland Cnty. Sherriff's Dep't*, 227 F.3d 719, 724 (6th Cir. 2000) ......... 9, 12, 14, 15

*Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010)......................................... 17

*Johnson v. Cleveland City School Dist.*, 443 F.App'x 974, 986 (6th Cir.2011)......................... 13

*Keith v. Cnty. of Oakland,* 703 F.3d 918, 923 (6th Cir. 2013) ...................................................... 9

*Keogh v. Concentra Health Servs.*, 752 F.App'x 316, 324 (6th Cir.2018).................................. 9

*Kleiber v. Honda of Am. Mfg.*, 420 F.Supp.2d 809, 826 (S.D. Ohio 2006) ......................... 19, 20

*Lee v. City of Columbus*, S.D.Ohio No. 2:07-cv-1230, 2009 U.S. Dist. LEXIS 78151, at *23-24 (Aug. 31, 2009).............................................................................................................................. 16

*Meade v. AT&T Corp.*, 657 F.App'x 391, 396 (6th Cir.2016) .................................................. 9, 12

*Moore v. Mason Cty.*, E.D.Ky. No. 16-185-DLB-CJS, 2018 U.S. Dist. LEXIS 149752, at *25 (Sep. 4, 2018)................................................................................................................................. 14

*Porter v. Tri-Health, Inc.*, S.D.Ohio No. 1:16cv00978-WOB, 2018 U.S. Dist. LEXIS 188029, at *29 (Nov. 2, 2018).......................................................................................................................... 13

*Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 317 (3d Cir. 1999) .............................. 19, 22

*Wardia v. Justice & Pub. Safety Cabinet Dept. of Juvenile Justice*, 509 F.App'x 527, 531 (6th Cir.2013).......................................................................................................................................... 12

*White v. Interstate Distrib.*, 438 F.App'x 415, 418 (6th Cir.2011) ............................................ 10

## Statutes

42 U.S.C. §12111(10) ..................................................................................................................... 16

42 U.S.C. §12111(8) ....................................................................................................................... 16

42 U.S.C. §12112(a) ......................................................................................................................... 9

## Rules
Fed.R.Civ.P. 56(a) ................................................................................................................ 8

## Regulations
29 C.F.R. §1630.2(n)(1)........................................................................................................ 10
29 C.F.R. §1630.2(p)(2)(v) .................................................................................................. 17
29 C.F.R. pt. 1630, App. §1630(o) ...................................................................................... 12
29 C.F.R. pt. 1630, App. §1630.2(n) ................................................................................... 14

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

A change in the patient population combined with Plaintiff's vision impairment unfortunately made it unsafe for Plaintiff to continue in her role as a Rehabilitation Therapist in University Hospitals' Geriatric Psychiatric Department as Plaintiff simply could no longer perform the essential functions of her job. There were no additional reasonable accommodations that could be made to help Plaintiff perform as required.  Providing a staff member to be with Plaintiff at all times was impossible because University Hospitals' was undergoing system wide reductions in force that resulted in four positions being eliminated from Plaintiff's department.

Plaintiff underwent a fitness for duty examination that included consultations with experts to determine if the concerns of Plaintiff's supervisors regarding her inability to perform her job were correct.  After it was determined Plaintiff could not safely work, University Hospitals did not discharge Plaintiff immediately, rather, it made efforts to keep her employed. University Hospitals placed Plaintiff on a personal leave of absence and assigned her a career coach.  But, over the next six months Plaintiff never contacted or met with the career coach, never identified any other jobs she might be qualified for and did not apply for any other jobs at University Hospitals.  As a result, Plaintiff's employment ended.

Plaintiff's rights were not violated. University Hospitals did what the law requires of employers. The material facts are not in dispute and as a result, summary judgment in favor of University Hospitals should be granted.

## II.    STATEMENT OF THE ISSUES

At issue in this Motion for Summary Judgment is whether, given the undisputed facts, Plaintiff can demonstrate that she was qualified to perform the essential functions of her position as a Rehabilitation Therapist with or without reasonable accommodation.  Also at issue is whether Plaintiff can demonstrate that she was denied any reasonable accommodations. In

particular, the issue is whether Plaintiff's proposed accommodation of additional staff members being present during group therapy sessions posed an undue hardship.

### III.     STATEMENT OF FACTS

In 2014, University Hospitals acquired Parma Community General Hospital where Plaintiff was employed as Rehabilitation Therapist in the Geriatric Psychiatric Department ("Department"). (Deposition of Plaintiff Deborah Moss, pg. 23:22-24 (April 8, 2019) (hereafter "Plaintiff Dep."), cited portions of Plaintiff's deposition attached as Exhibit 1). The Department is a locked floor in which patients experiencing severe, acute psychotic issues receive inpatient treatment for a period of approximately seven to ten days. (Declaration of Kathryn Holley, ¶3 (April 15, 2019), attached as Exhibit 2 (hereafter "Holley Dec.")). Plaintiff suffers from Stargardt disease which impairs her central vision. (Plaintiff Dep., pg. 5:22-6:17). This is a progressive condition and Plaintiff's central vision deteriorated over time. (Plaintiff Dep., pg. 6:13-7:19). As Plaintiff testified, the loss in central vision prevents her from reading facial expressions, visualizing a person's emotions, or seeing their affect or disposition. (Plaintiff Dep., pgs. 11:13-12:18, 95:10-25, 96:23-99:6, 100:1-23, and 116:15-24).

Following the acquisition in 2014, Plaintiff continued her employment as a part-time Rehabilitation Therapist in the Department working three days a week. (Declaration of Deborah Sheldon, ¶5 (April 15, 2019), attached as Exhibit 3 (hereafter "Sheldon Dec.")). As a Rehabilitation Therapist, Plaintiff's primary job duties were to:

- Ensure a safe environment for patients, including regular completion of non-violent crisis intervention training and demonstrated ability to maintain safety on the unit;

- Perform assessments of patients' functional and rehabilitative needs, including their cognitive and emotional condition, ability to perform activities of daily living, their social, leisure, and vocations skills, and their mobility;

- Plan, prepare, implement, and evaluate group therapy that targeted patients functional and rehabilitative needs;

- Plan, prepare, implement, and evaluate individual therapy including cognitive stimulation and motor activity for patients that are not able to participate in group therapy;

- Provide education to patients and families about patients' assessed needs;

- Participate in interdisciplinary rounds daily, contribute insights, assessments, and interventions and evaluate progress toward patient goals;

- Document patients' group participation notes daily and update treatment plans;

- Maintain therapeutic milieu, awareness, and ability to support, intervene, re-direct and limit set with patients throughout the day; and

- Respond to call lights, escalating patient situations, and assess environment for safety risks, *e.g.,* dangerous objections or ligature risks, and assist patients to leave an escalating environment.

(Plaintiff Dep., pgs. 37:17-45:23 and Sheldon Dec., ¶5). The minimum qualifications for a Rehabilitation Therapist include having the "physical, cognitive, ***and perceptual ability*** to provide appropriate patient therapies." (Sheldon Dec., ¶5; *see also* Rehabilitation Therapist Job Description, attached as Exhibit 4) (***emphasis*** added).

Plaintiff admitted that after the University Hospitals acquisition, there were changes both in the way the Department operated and in the patient population that was served. There was:

1. An increase in patient acuity, or patients with higher risk of self-harm or harm to others (Plaintiff Dep., pg. 33:9-25);

2. An increased severity of psychiatric issues experienced by the patients (Plaintiff Dep., pgs. 32:9-33:7 and Holley Dec., ¶3);

3. A change in patient demographics to a younger geriatric population (late 50s and 60s under University Hospitals as opposed to 70s and 80s when it was Parma Community General Hospital) (Plaintiff Dep., pgs. 31:7-32:8 and Holley Dec., ¶4);

4. An increase in "code violets" or situations that required physical intervention with a patient experiencing an outburst (Plaintiff Dep., pg. 34:1-14; Sheldon Dec., ¶3; and Holley Dec., ¶3); and

3

5. Fewer staff on the Department to monitor patient activities and provide assistance to one another due to reductions in force. (Plaintiff Dep., pgs. 136:22-137:9; Sheldon Dec., ¶4; and Holley Dec., ¶5).

After the acquisition, the most common diagnoses for patients on the Department include Schizophrenia with psychotic features, Bipolar Mania or Depression, Dementia with Behavioral Disturbance, Depression with Suicide attempt, or suicidal ideation. (Holley Dec., ¶3).

In January 2016, Kathryn Holley ("Holley") became Plaintiff's direct supervisor. (Holley Dec., ¶7). During 2016, Holley spent considerable time observing the Department's operations for areas of improvement including: evaluating the current staff; evaluating how patients were assessed, treated, and discharged; examining the process for documenting treatment, and ensuring regulatory compliance. (Holley Dec., ¶6). These efforts were part of the overall effort by University Hospitals to assimilate the Department into their system. (Holley Dec., ¶6).

Throughout 2016, Holley became increasingly concerned about Plaintiff's ability to perform the essential functions of her job and discussed her concerns with Deborah Sheldon, HR Generalist ("Sheldon"). (Sheldon Dec., ¶6). Holley observed that Plaintiff was not able to fully assess patients and their response to group therapy. (Holley Dec., ¶¶11-12 and Sheldon Dec., ¶6). Plaintiff could not monitor and evaluate her patients' needs and responses to the group therapy she was providing. (*Id.*). Plaintiff lacked situational awareness in regard to agitated patients on the Department. (*Id.*). Holley's concerns continued to increase after repeated observations that Plaintiff was unable to detect patients' facial expressions, demeanor, and non-verbal behavior coupled with other staff telling Holley that they did not feel safe leaving Plaintiff in her group therapy sessions alone because they feared for her safety and the safety of the patients. (Holley, ¶¶11-12).  Additionally, in 2016 and 2017, Holley observed Plaintiff engage in the following specific problematic behaviors:

- physically walking into other staff members in the hallway;

4

- inability to complete assessments due to lack of visual cues, *i.e.,* is the patient smiling, demonstrating distraction, staring off, actively hallucinating, etc.

- inability to respond to non-verbal patients' needs in group therapy; and

- entering patient rooms without awareness of behavioral issues being experienced by the patient.

(Holley Dec., ¶¶11-12). In addition, during the mandatory crisis intervention training in February 2017, Plaintiff's partner used slow and deliberate physical cues to enable Plaintiff to complete the physical intervention techniques. (Declaration of Christina Rivera, ¶¶6-7 (April 12, 2019), attached as Exhibit 5 (hereafter "Rivera Dec.")).  While Plaintiff was able to complete the training with the slow and deliberate cues, safety concerns persisted because in a real life crisis Plaintiff would not receive slow and deliberate physical cues from a psychotic patient and she may not therefore be able to timely and appropriately respond to a patient that is agitated or experiencing a violent outburst. (Rivera Dec., ¶7 and Holley Dec., ¶¶11(i) and 12).

In early 2017, Holley again discussed her on-going concerns with Sheldon. (Holley Dec., ¶13 and Sheldon Dec., ¶9). After reviewing the essential functions of Plaintiff's position and analyzing Holley's observations and concerns, it was decided that Plaintiff receive a mandatory referral to University Hospitals' Employee Assistance Program to complete a fitness for duty evaluation ("Fit for Duty"). (Holley Dec., ¶13 and Sheldon Dec., ¶11). Plaintiff was placed on paid administrative leave until the Fit for Duty was completed. (Plaintiff Dep., pg. 127:6-22). To complete the Fit for Duty, University Hospitals provided Plaintiff with forms to be completed by Plaintiff's primary care physician and eye doctors so that University Hospitals could determine whether or not Plaintiff could perform the essential functions of her position as a Rehabilitation Therapist. (Declaration of Georgene Kohlbacher, ¶6 (April 12, 2019), attached as Exhibit 6 (hereafter "Kohlbacher Dec.")). As part of the Fit for Duty process, University Hospitals met with Plaintiff to explain their concerns and the process, sent Plaintiff's job description and work

authorization forms to Plaintiff's physicians, and received and reviewed reports from Plaintiff's primary care physician, two ophthalmologists, and two occupational therapists. (Kohlbacher Dec., ¶¶5-11). The findings from the Fit for Duty process included the following:

- Dr. Balciunas, an ophthalmologist that evaluated Plaintiff, stated that due to Plaintiff's vision impairment Plaintiff had difficulty seeing facial expressions, could be unaware of someone getting out of their seat, and  opined that Plaintiff was unable to perform her job functions because she "may not always have visual awareness of everything going on in [the] room." (Kohlbacher Dec., ¶7 and Low Vision Clinic Report of Lidija Balciunas, O.D., March 21, 2017, attached as Exhibit 7 (hereafter "Balciunas Report")).

- Erin St. Denis, an Occupational Therapist from the Cleveland Sight Center, stated that Plaintiff could be accommodated for completion of the crisis intervention training by "verbal and touch prompts to motor [Plaintiff] through physical components" of training.  St. Denis also noted that Plaintiff could "listen for tone of voice or responsiveness" of patients and rely on "other staff/nurses for feedback regarding patient behavior or affect. Otherwise, [Plaintiff] is unable to see faces or expressions." (Kohlbacher Dec., ¶8 and Occupational Therapy Low Vision Evaluation Report of Erin St. Denis, OTR/L, attached as Exhibit 8 (hereafter "St. Denis Report")).

- Allison Evans, an Occupational Therapist employed by University Hospitals evaluated Plaintiff's work environment on the Department including shadowing a Rehabilitation Therapist. She noted that the job duties required excellent situational awareness, attention to detail, and ability to interpret the affect of multiple patients at once through facial recognition and body language.  Evans also noted the job required responses to patients experiencing internal stimuli, behavioral issues, and safety risks.  Evans concluded that "little [] can be done to accommodate for the variability of a psychiatric patient population for someone with such significant vision deficits." (Kohlbacher Dec., ¶9 and Functional Capacity Evaluation of Allison Evans, MHR, OTR/L, CLT, May 5, 2017, attached as Exhibit 9 (hereafter "Evans Report")).

- Elias Traboulsi, M.D., Plaintiff's treating ophthalmologist, advised that Plaintiff was not able to see details directly in front of her and could not recognize faces that give queues to a person's feelings or situation. (Kohlbacher Dec., ¶11 and Report of Elias Taboulsi, M.D., M.Ed., May 23, 2017, attached as Exhibit 10 (hereafter "Traboulsi Report")).

Accordingly, on June 1, 2017, University Hospitals met with Plaintiff to discuss their on-going concerns about Plaintiff's ability to perform her essential job duties. (Plaintiff Dep., pgs. 128:8-129:24).  During this meeting, Plaintiff acknowledged "the legitimacy of [University

6

Hospitals'] safety concerns, the increase in patient acuity, increased severity of psychiatric issues, the change in patient demographics, increased code violets, and fewer staff to monitor patient activities and to deliver assistance during patient outbursts." (Plaintiff Dep., pgs. 136:11-137:9; Sheldon Dec., ¶¶14 and 21; and Letter from Sheldon to Plaintiff, September 6, 2017, attached as Exhibit 11). The only accommodations proposed by Plaintiff or the ophthalmologists and occupational therapists during the Fit for Duty to address University Hospitals' concerns in regard to the patient care aspects of Plaintiff's job was to use auditory compensation strategies to listen for patients' tone of voice or responsiveness and to have an additional staff member attend the group therapy sessions with Plaintiff to give her feedback and verbal confirmation of the patients' behavior, affect, and response to therapy. (Plaintiff Dep., pgs. 128:8-133:2; Sheldon Dec., ¶14; and Holley Dec., ¶17). University Hospitals considered these proposed accommodations but determined they did not enable Plaintiff to perform the essential functions of her position, were not reasonable, and/or imposed undue hardship. (Plaintiff Dep., pg. 129:4-14 and Holley Dec., ¶¶19-22).

Having another staff member present during Plaintiff's group therapy sessions was not feasible based on cost and staffing requirements. (Holley Dec., ¶¶21-22 and Sheldon Dec., ¶17). Having another staff member present would also fundamentally alter the essential functions of Plaintiff's job and the other staff member's job. (*Id.*). Having Plaintiff use auditory compensation strategies simply was insufficient to ensure a safe environment and enable Plaintiff to fully perform the essential patient care functions of her job. (Holley Dec., ¶20). Imagine the liability if someone silently and without any verbalization choked or stabbed someone else. This risk was simply not acceptable.  Accordingly, the Fit for Duty evaluation concluded with a determination that Plaintiff was unable to return to her position as a Rehabilitation Therapist because she could not fully perform the essential functions of her job. (Holley Dec., ¶19 and Sheldon Dec., ¶19).

7

The essential functions that Plaintiff could not perform were those that involved direct patient care, including completing patient assessments, providing and evaluating patients' responses to group therapy, and ensuring a safe environment for patients and staff.  (*Id.*).

University Hospitals advised Plaintiff she could not return to work as a Rehabilitation Therapist in the Department. (Plaintiff Dep., pg. 133:3-17). On June 9, 2017, Plaintiff was taken off administrative leave and started using her paid time off, which she continued to use until the end of September 2017. (Sheldon Dec., ¶¶19-20). Thereafter, Plaintiff was permitted to have a personal leave of absence so she could remain employed and continue receiving benefits. (Plaintiff Dep., pgs. 133:25-134:14). University Hospitals assigned Plaintiff a career coach, Faye Naftzger, to work with Plaintiff to identify other potential positions at University Hospitals that she might be qualified for and could perform. (Plaintiff Dep., pg. 130:2-17; Sheldon Dec., ¶¶19-21; and September 6, 2017 Letter attached as Exhibit 11). However, despite University Hospitals repeated requests, Plaintiff never contacted the career coach, never identified or indicated interest in any other positions at University Hospitals, and did not apply for any other positions at University Hospitals. (Plaintiff Dep., pgs. 130:2-17 and 137:10-138:3). As a result, after nearly six months of inactivity and Plaintiff taking no steps whatsoever, on December 31, 2017 her employment ended. (Sheldon Dec., ¶22 and Letter from Sheldon to Plaintiff, January 18, 2018, attached as Exhibit 12).

## IV.    LAW AND ARGUMENT

### A.    Summary Judgment Should Be Granted In This Case.

Summary judgment is proper if the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  Summary judgment is proper against Plaintiff if she fails provide sufficient evidence to establish the existence of any essential element she has the burden to prove

at trial. *Celotex Corp. v. Catrett*, 477 U.S., 317, 323(1986). Plaintiff must present sufficient evidence that a jury could reasonably find in her favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  The mere existence of a scintilla of evidence to support Plaintiff's position is insufficient. *Id.* The evidence must be sufficient for a jury to reasonably find in Plaintiff's favor. *Id.* at 252.  Here, there are no genuine issues of material fact, Plaintiff cannot meet her burden of proof, and University Hospitals is entitled to judgment as a matter of law.

### B.    Plaintiff Can Not Set Forth A Prima Facie Case of Disability Discrimination.

Plaintiff alleges one claim: disability discrimination.  Plaintiff bases her disability discrimination claim on University Hospitals' allegedly failing to accommodate her disability. Accordingly, the Court must first determine if Plaintiff can establish the elements of her *prima facie* case: (1) that Plaintiff is disabled; (2) that Plaintiff is "otherwise qualified" for the position, either with or without reasonable accommodation or with non-essential job functions removed; and (3) that Plaintiff has been denied reasonable accommodation or subjected to an adverse employment decision because she is disabled. 42 U.S.C. §12112(a); *see also Keith v. Cnty. of Oakland,* 703 F.3d 918, 923 (6th Cir. 2013); *Keogh v. Concentra Health Servs*., 752 F.App'x 316, 324 (6th Cir.2018). If Plaintiff meets this burden, next, the Court must determine if the "challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer." *Meade v. AT&T Corp.*, 657 F.App'x 391, 396 (6th Cir.2016); *Belasco v. Warrensville Hts. City School Dist.*, 634 F.App'x 507, 514 (6th Cir.2015); *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 724 (6th Cir. 2000).

Plaintiff was not qualified to continue working in her position because she could not perform the essential functions with or without a reasonable accommodation. The job functions that Plaintiff could not perform, *i.e.,* those related to direct patient care and ensuring a safe

environment, were essential.   Finally, Plaintiff's proposed accommodation to have another employee in her group therapy sessions was an undue hardship.

### (1) Plaintiff Could Not Perform The Essential Functions Of Her Job With Or Without Accommodations.

There are two types of essential functions that Plaintiff was unable to perform: (1) those involving direct patient care, including assessments of patients; fully evaluating patients' response to group therapy; maintaining therapeutic milieu, awareness, and ability to support with patients throughout the day; and (2) ensuring a safe environment for patients, including performing non-violent crisis intervention techniques if needed and responding to escalating patient situations.   These are all essential functions of a Rehabilitation Therapist because they are "fundamental job duties of the employment position the individual with a disability holds" and not merely marginal functions. 29 C.F.R. §1630.2(n)(1); *Boileau v. Capital Bank Fin. Corp.*, 646 F.App'x 436, 441 (6th Cir.2016); *White v. Interstate Distrib.*, 438 F.App'x 415, 418 (6th Cir.2011). Moreover, in this case, there is no dispute that these are essential functions as Plaintiff agreed these were the essential functions in her deposition. (Plaintiff Dep., pg. 37:17-45:23).

Plaintiff admitted in deposition that the only possible accommodations to enable her to complete these essential functions were for her to use auditory compensation strategies, *i.e.,* listening for tone of voice and listening for responsiveness to questions asked, or having another staff member present in her group therapy sessions to provide "feedback regarding patient behavior or affect." (St. Denis Report, attached as Exhibit 8 and Plaintiff's Dep., pgs. 128:8-133:2 and 135:12-17).  Neither accommodation is reasonable as a matter of law.

Fully performing assessments of patients, evaluating their response to group therapy, maintaining therapeutic milieu and awareness, and recognizing and responding to agitated patients that pose a safety risk requires the ability to visually read facial expressions and emotions. (Holley Dec., ¶20; Balciunas Report, Bates No. 1362, attached as Exhibit 7; St. Denis

Report, Bates No. 1447, attached as Exhibit 8; and Traboulsi Report, Bates No. 1391, attached as Exhibit 10). This is especially true with psychiatric patients who are non-verbal or who choose not to be verbal. (Holley Dec., ¶20). Plaintiff testified that she encounters and is required to provide therapy to this type of psychotic patient. (Plaintiff Dep., pgs. 42:24-43:1 and Holley Dec., ¶20). While University Hospitals permitted Plaintiff to use auditory compensation strategies, this accommodation would not enable Plaintiff to fully perform the essential functions of her job. As noted by Erin St. Denis, an occupational therapist, while Plaintiff could "listen for tone of voice or responsiveness" of patients and rely on "other staff/nurses for feedback regarding patient behavior or affect," she otherwise was "unable to see faces or expressions." (St. Denis Report, Bates No. 1447, attached as Exhibit 8). Likewise, Dr. Balciunas, an ophthalmologist, stated that due to Plaintiff's vision impairment she had difficulty seeing facial expressions, could be unaware of someone getting out of their seat, and opined that Plaintiff was unable to perform her job functions because she "may not always have visual awareness of everything going on in [the] room." (Balciunas Report, Bates No. 1362-63, attached as Exhibit 7 ("Certain job functions are challenging due to loss of central vision … such as facial recognition and interpretation."). Dr. Traboulsi, Plaintiff's treating ophthalmologist, advised University Hospitals that Plaintiff was not able to see details directly in front of her and could not recognize faces that give queues to a person's feelings or situation. (Traboulsi Report, Bates No. 1391, attached as Exhibit 10). Accordingly, based on the expert opinions gathered in the Fit for Duty process, auditory compensation strategies would not enable Plaintiff to fully complete patient assessments, evaluate their response to therapy, or determine whether they pose a safety risk to themselves or others.

Likewise, having another staff member present is not a reasonable accommodation that University Hospitals could provide to enable Plaintiff to perform her essential job duties. "[T]he

ADA does not require employers to accommodate individuals by shifting an essential job function onto others." ***Meade v. AT&T Corp***., 657 F.App'x 391, 397 (6th Cir.2016) ***citing Hoskins v. Oakland Cty. Sheriff's Dept.***, 227 F.3d 719, 728-729 (6th Cir. 2000); ***Belasco v. Warrensville Hts. City School Dist***., 634 F.App'x 507, 516 (6th Cir.2015); ***Wardia v. Justice & Pub. Safety Cabinet Dept. of Juvenile Justice***, 509 F.App'x 527, 531 (6th Cir.2013); s*ee, also, **Bratten v. SSI Servs., Inc.**,* 185 F.3d 625, 632 (6th Cir. 1999) (employer not required by ADA to allow co-workers to perform as much as 20% of the essential automotive mechanic duties for plaintiff when he needs assistance); 29 C.F.R. pt. 1630, App. §1630(o) ("An employer or other covered entity is not required to reallocate essential functions.").

As Plaintiff testified, she performed two group therapy sessions each day, one in the morning and one in the afternoon, and this was her primary job function. (Plaintiff Dep., pgs. 37:17-22 and 39:21-40:5 and Holley Dec., ¶7). Plaintiff, like all Rehabilitation Therapists, performed these group therapy sessions on her own and she was required to evaluate patients' responses, assess their progress, and incorporate her findings into the patients' plan of care. (Plaintiff Dep., pgs. 48:8-17 and 141:22-142:2 and Holley Dec., ¶7). Providing another staff member to observe patients in Plaintiff's group therapy sessions and provide feedback on their behavior, affect, and response to therapy was not reasonable. (Holley Dec., ¶¶21-22 and Sheldon Dec., ¶17).  Due to budget constraints, between 2015 and 2017, the Department experienced a reduction of four (4) staff members: a registered nurse, a patient care assistant, a community liaison, and the assistant nurse manager. (Holley Dec., ¶¶5 and 22).  There were no Department funds to provide additional staff to attend Plaintiff's twice daily group sessions. Additionally, the only other staff members who worked full time on the Department, *i.e.,* registered nurses and patient care assistants, had other duties to perform while Plaintiff was providing group therapy to the patients. Group time was when registered nurses could complete physician consults,

pharmacy consults, patient charting, and discharge and admission paperwork.  (Holley Dec., ¶21).  Patient care assistants used this time to complete their environmental rounds, *i.e.,* inspecting patient rooms, belongings, etc. to ensure no materials that could pose safety risks are accessible to patients in the Department, completing inventory and stocking for supplies on the unit, charting, and cleaning. (Holley Dec., ¶21).

More importantly, assigning another employee to attend Plaintiff's group therapy sessions to provide feedback on patient behavior, affect, and response to therapy would also require a change in the assigned person's essential job functions as well as Plaintiff's essential job functions which is *per se* unreasonable in the Sixth Circuit. Courts have consistently concluded that "employers are not required to assign existing employees or hire new employees to perform certain functions or duties of a disabled employee's job which the employee cannot perform by virtue of his disability." ***Bratten v. SSI Servs., Inc.,*** 185 F.3d 625, 632-633 (6th Cir. 1999) (affirming summary judgment in favor of employer); ***Johnson v. Cleveland City School Dist.***, 443 F.App'x 974, 986 (6th Cir.2011) ("having another person instantly available to step in and enforce order at all times would require the employment of two full-time positions to do the job of a single employee—this is clearly an undue burden on the District and is not a reasonable accommodation."). Simply put, a reasonable accommodation does not include removing an "essential function" from Plaintiff's position as that is *per se* unreasonable. ***E.E.O.C. v. Ford Motor Co.***, 782 F.3d 753, 761 (6th Cir. 2015); ***Porter v. Tri-Health, Inc.***, S.D. Ohio No. 1:16cv00978-WOB, 2018 U.S. Dist. LEXIS 188029, at *29 (Nov. 2, 2018) ***citing Bush v. Compass Grp. USA, Inc.***, 683 F. App'x 440, 449 (6th Cir.2017) ("a proposed accommodation requesting that an employer remove an essential function from the position is per se unreasonable."). Accordingly, having another staff member attend Plaintiff's group therapy

sessions to provide her feedback on patients' behavior, affect, and response to therapy was not reasonable as a matter of law.

It is anticipated Plaintiff will argue that she was able to complete her patient care duties and ensure a safe environment because she was not involved in any safety incidents. This argument fails. It assumes that an employer must wait for something terrible to happen before it takes steps to protect against a known danger. Obviously, in a setting such as the Department where the employer owes a duty to keep its patients safe (Plaintiff Dep., pg. 44:19-23), the employer does not have to wait for something terrible to happen to take steps to protect the patients and employees.

Binding Sixth Circuit precedent is instructive on this point. In *Hoskins*, *supra,* the Sixth Circuit affirmed summary judgment in favor of the employer, despite the plaintiff's claims that the ability to restrain inmates was rarely needed and argued therefore it was not an essential function of her job as a deputy. In so holding, the Court found:

> [T]he deputy one position exists to supervise inmates and to maintain security. Although a deputy one may be required physically to restrain inmates only infrequently, the potential for physical confrontation with inmates exists on a daily basis, and the consequence of failing to require a deputy to perform this function when the occasion arises could be a serious threat to security. See 29 C.F.R. pt. 1630, App. §1630.2(n) ("The consequences of failing to require the employee to perform the function may be another indicator of whether a particular function is essential. For example, although a firefighter may not regularly have to carry an unconscious adult out of a burning building, the consequence of failing to require the firefighter to be able to perform this function would be serious.")

*Hoskins v. Oakland Cty. Sheriff's Dept.*, 227 F.3d 719, 727 (6th Cir. 2000); *see, also*, *Moore v. Mason Cty.*, E.D.Ky. No. 16-185-DLB-CJS, 2018 U.S. Dist. LEXIS 149752, at *25 (Sep. 4, 2018) ("[P]ermitting a deputy jailer who is unable to safely supervise inmates to work in the Detention Center presents a serious threat to security and safety, for deputy jailers and inmates alike."). This case is just like *Hoskins*. While it may be true that at the time Plaintiff was removed from her job, no specific safety incidents had occurred, "the potential for physical

confrontation with [psychotic patients] exists on a daily basis, and the consequence of failing to require a[n employee of the Department] to perform this function when the occasion arises could be a serious threat to security." *Hoskins*, 227 F.3d at 726. The Sixth Circuit has reached the same holding in various contexts. For example, in *Brickers,* the Court found:

> Although, as [plaintiff] has argued, it may be true that an attendant seldom, if ever, must perform any lifting, the ability to lift would be crucial in an emergency situation, such as an accident or fire. Much like a police officer must have the skill required to use a firearm yet might never actually draw his or her weapon, it only stands to reason that a bus attendant charged with the supervision and care of a group of children with peculiar needs and limitations would be able to account for those needs and limitations in any foreseeable circumstance, regardless of whether that circumstance actually arises. *Brickers v. Cleveland Bd. of Educ.,* 145 F.3d 846, 849-50 (6th Cir. 1998).

In this case, just like the prison guard in *Hoskins,* the bus attendant for special education children in *Brickers,* and a police officer who never actually draws their weapon, Plaintiff's inability to react and respond to a patient crisis posed a serious threat to safety that made her unable to perform the essential functions of her job. Plaintiff provided group therapy to up to 14 psychotic patients with severe psychiatric diagnoses that included schizophrenia, depression with suicidal ideation or attempts, mania, etc. (Plaintiff Dep., pgs. 32:9-33:7, 102:19-103:2, and 119:15-120:6). Plaintiff must be able to respond appropriately in the event of an emergency, *i.e.,* if a psychotic patient experiences a violent outburst or attacks Plaintiff or another patient. University Hospitals observed Plaintiff's inability to complete this essential function. (Rivera Dec., ¶¶6-7). As part of the Fit for Duty process, two ophthalmologists and an occupational therapist that evaluated Plaintiff confirmed that she "may not always have visual awareness of everything going on in [the] room," was not able to see details directly in front of her, could not recognize faces that give cues to a person's feelings or situation, and was "unable to see faces or expressions." (Balciunas Report, Bates No. 1362, attached as Exhibit 7; St. Denis Report, Bates No. 1447, attached as Exhibit 8; and Traboulsi Report, Bates No. 1391, attached as Exhibit 10).

15

Plaintiff does not dispute these findings, and admitted that she might not be able to perceive a patient experiencing a violent outburst. (Plaintiff Dep., pg. 72:5-19).

Accordingly, as Plaintiff cannot show that she can perform the essential functions of her position with or without an accommodation, she is not a "qualified individual with a disability" within the meaning of 42 U.S.C. §12111(8), and fails to make out a *prima facie* case of discrimination. *Brickers*, 145 F.3d at 850. The ADA does not demand that an employer exempt a disabled employee from an essential function of the job as an accommodation. *Hall v. United States Postal Serv.,* 857 F.2d 1073, 1078 (6th Cir. 1988) ("[a]n accommodation that eliminates an essential function of the job is not reasonable."). The accommodation Plaintiff requested and would require in this case, *i.e.,* having another staff member present during her group therapy to provide feedback on patient behavior, affect, and response to therapy, is not an accommodation, but rather an exemption and, as such, does not survive the threshold determination of whether she is a "qualified individual with a disability." *Brickers*, 145 F.3d at 850. Summary judgment in favor of University Hospitals is warranted.

### *(2) The Proposed Accommodation Of Having Another Staff Member Attend Plaintiff's Group Therapy Sessions Would Create An Undue Hardship.*

To be required under the ADA, a requested accommodation must not impose an undue hardship on the employer. 42 U.S.C. §12111(10). To satisfy her burden of proposing a reasonable accommodation, Plaintiff must "suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Lee v. City of Columbus*, S.D.Ohio No. 2:07-cv-1230, 2009 U.S. Dist. LEXIS 78151, at *23-24 (Aug. 31, 2009); *Bukta v. J.C. Penney Co*., 359 F.Supp.2d 649, 667 (N.D.Ohio 2004); *Holt v. Olmsted Twp. Bd. of Trustees*, 43 F.Supp.2d 812, 823 (N.D.Ohio 1998) (granting partial summary judgment to employer). If an employee establishes that a reasonable accommodation is possible, "then the employer bears the burden of proving that the accommodation is unreasonable and imposes an

undue hardship on the employer." ***Holt v. Olmsted Twp. Bd. of Trustees***, 43 F.Supp.2d 812, 821 (N.D. Ohio 1998) ("[T]he impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business" should be considered when evaluating the reasonableness of an accommodation request.); 29 C.F.R. §1630.2(p)(2)(v); ***see, also, Brumley v. UPS***, 909 F.3d 834, 839 (6th Cir.2018) ("Discrimination includes a failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ***unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.***") (***emphasis*** added).

Plaintiff's burden includes showing both that she proposed an accommodation and that the proposed accommodation was reasonable. ***Jakubowski v. Christ Hosp., Inc.***, 627 F.3d 195, 202 (6th Cir. 2010); ***Hersko v. Wilson***, S.D.Ohio No. 3:15-cv-215, 2018 U.S. Dist. LEXIS 119573, at *40 (July 18, 2018) *citing* ***Hedrick v. W. Res. Care Sys***., 355 F.3d 444, 457 (6th Cir. 2004) ("A disabled employee who claims that he is otherwise qualified with a reasonable accommodation bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.")

Plaintiff's proposed accommodation of having another staff member present in her group therapy sessions to provide Plaintiff with feedback on patient behavior, affect, and response to therapy is not reasonable because it would impose an undue hardship. In the three years after University Hospitals acquired Parma General Hospital, there were reductions in force across the University Hospitals system including within the Department. (Holley Dec., ¶¶5, 22 and Sheldon Dec., ¶¶4, 17). Between 2015 and August 2017, the Department experienced a reduction of four (4) staff members: a registered nurse, a patient care assistant, a community liaison, and the assistant nurse manager. (Holley Dec., ¶5). As the remaining staff in the Department all had

separate job duties to perform while Plaintiff was to be conducting group therapy, there was no one available who could remain present in the group therapy sessions with Plaintiff at all times. (Holley Dec., ¶21). Moreover, in the June 1, 2017 meeting, Plaintiff acknowledged the reduction in staff on the Department admitting "there was fewer staff to monitor patient activities and deliver assistance during patient outbursts." (Plaintiff Dep., pgs. 136:22-137:9). As a matter of law, University Hospitals is not required to provide additional staff to assist Plaintiff in performing her duties as this would impose an undue hardship. ***Belasco v. Warrensville Heights City Sch. Dist.,*** 634 F. App'x 507, 516 (6th Cir. 2015) ("employer [not required] to hire a second person to fulfill the job responsibilities performed by one person.").

C.    **Plaintiff Was Not Denied Any Reasonable Accommodations.**

Plaintiff may argue that she was denied reasonable accommodations in the form of adaptive equipment or other technology related accommodations that would have helped her more easily perform portions of her job that required reading and writing.  This argument is a red herring for several reasons.  The portions of Plaintiff's job that required her to read and write did not form the basis of University Hospitals' decision not to return Plaintiff to her position following the Fit for Duty process. (Holley Dec., ¶¶10, 18 and Sheldon Dec., ¶¶7, 18). Moreover, the testimony is undisputed that had Plaintiff been able to perform the patient care duties and ensure a safe environment, University Hospitals would have provided Plaintiff with the adaptive equipment she requested. (*Id.*).  This is further supported by the fact that Plaintiff had been utilizing such accommodations for years, including a closed circuit television, Zoom text software, a larger monitor, having other employees read her email, etc.  (Plaintiff Dep., pgs. 105:9-22 and 108:4-11).

In the Sixth Circuit, when determining whether an employer has provided the necessary accommodation, an employer is not generally required to act immediately. ***Gerton v. Verizon***

18

*South Inc.*, 145 F. App'x 159, 168 (6th Cir. 2005).  Rather, an employee must produce evidence demonstrating that any "delay in [responding to] her request for accommodation was unreasonable." *Id.* at 169. All the interactive process requires is that employers make a good-faith effort to seek accommodations. *Kleiber v. Honda of Am. Mfg.*, 420 F.Supp.2d 809, 826 (S.D. Ohio 2006), *citing Taylor v. Phoenixville School Dist.,* 184 F.3d 296, 317 (3d Cir. 1999). Employers can show their good faith by taking steps such as meeting with the employee who requests an accommodation, requesting information about the condition and the employee's limitations, asking the employee what she wants, considering the employee's request, and offering to discuss available alternatives. *Id*. An employee "cannot base a disability discrimination claim upon an employer's delay in providing a requested accommodation where the delay is due to internal processing or to events outside the employer's control." *Gerton*, 145 F. App'x at 168.

The sole reason Plaintiff's requests for updated adaptive equipment as accommodations were not provided was because Plaintiff was undergoing the Fit for Duty process. (Holley Dec., ¶18 and Sheldon Dec., ¶18). If Plaintiff would have returned to work, University Hospitals would have continued to provide adaptive equipment as it had done in the past.  Accordingly, the fact that Plaintiff did not receive updated adaptive equipment while she was off work during the Fit for Duty process cannot as a matter of law form the basis for Plaintiff's disability discrimination claims. *Kleiber,* 420 F.Supp.2d at 826; *Gerton*, 145 F. App'x at 168.

Plaintiff may also argue that University Hospitals failed to provide a reasonable accommodation by not reassigning Plaintiff to a different position.  Again, this argument fails. During the June 1, 2017 meeting, Plaintiff conveyed her interest in continuing to work at UH Parma Medical Center. (Plaintiff Dep., pgs. 129:25-130:13). In response, University Hospitals assigned Plaintiff a career coach, Faye Naftzger, provided Plaintiff with Naftzger's name and

19

contact information, and repeatedly encouraged Plaintiff to contact Naftzger so potential positions that Plaintiff might be qualified for could be identified. (Plaintiff Dep., pgs. 130:7-131:21; September 6, 2017 Letter attached as Exhibit 11; and January 18, 2018 Letter attached as Exhibit 12). Plaintiff admitted that despite University Hospitals' urging, she did not contact Naftzger.[1] (Plaintiff Dep., pgs. 130:7-131:21).

In regard to an alleged request to transfer to a different position as an accommodation, "to overcome summary judgment, the plaintiff generally must identify the specific job [s]he seeks and demonstrate that [s]he is qualified for that position." *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 870 (6th Cir. 2007)*.* An employee merely making a statement that she "wishes to continue working" is not enough to establish a failure to accommodate. *Beckman v. Wal-Mart Stores, Inc.*, 739 Fed. Appx. 800, 804 (6th Cir. 2018).  Finally, an employer is only required to reassign an employee to a vacant position. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998).  The undisputed facts in this case demonstrate that Plaintiff did not meet with the career coach University Hospitals assigned to her, never identified any specific positions that she desired, never demonstrated she was qualified for any other positions, and there is no evidence Plaintiff was ever qualified for any vacant positions. Accordingly, under the mandates of *Kleiber, Beckman,* and *Cassidy,* to the extent Plaintiff claims a failure to accommodate for not reassigning her to another position, her claim fails as a matter of law.

## V.    CONCLUSION

There is no genuine dispute of material fact in this case.  There was no discrimination.  There is nothing for a jury to decide.  University Hospitals is entitled to judgment as a matter of law.

---

[1] Plaintiff finally contacted Naftzger in March 2019 after counsel for University Hospitals reiterated that this option remained available to Plaintiff.

Respectfully submitted,

/s/ Donald C. Bulea
Kerin Lyn Kaminski (00013522)
Donald C. Bulea (0084158)
GIFFEN & KAMINSKI, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone:    216-621-5161
Facsimile:    216-621-2399
E-mail:       kkaminski@thinkgk.com
              dbulea@thinkgk.com
**Counsel for Defendant University Hospitals**
**Health Systems, Inc.**

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

I certify that the foregoing Memorandum in Support of University Hospitals Health Systems, Inc. Motion for Summary Judgment complies with the page limitation set forth Local Rule 7.1 for cases assigned to the standard track, excluding the exhibits which are separate from the Memorandum.

/s/ Donald C. Bulea
Donald C. Bulea (0084158)
**Counsel for Defendant University Hospitals**
**Health Systems, Inc.**

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 15 2019, a copy of the foregoing *Defendant's Motion for Summary Judgment* was served via Electronic Mail upon the following Parties:

Emily White, Marc E. Dann and Donna Taylor-Kolis, Counsel for Plaintiff Deborah Moss at ewhite@dannlaw.com, mdann@dannlaw.com, dkolis@dannlaw.com and notices@dannlaw.com.

/s/ Donald C. Bulea
Donald C. Bulea (0084158)
***Counsel for Defendant University Hospitals Health Systems, Inc.***

22